UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-02175 |
| | § | |
| M & M X-PRESS SERVICE, LTD., | § | |
| EXPEDITORS INT'L OF WASHINGTON, INC., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants M & M X-Press Service, Ltd.'s ("M&M") and Expeditors Int'l of Washington, Inc.'s ("Expeditors") separate motions for summary judgment. Dkts. 21, 38. Upon consideration of the motions, responses, replies, summary judgment record and for the following reasons, both motions for summary judgment are GRANTED.

### BACKGROUND

Plaintiff General Electric Co. ("GE") leased two aircraft engines to Shandong Airlines of China ("Shandong") in December of 2004. The terms of the lease required that Shandong redeliver the engines at the end of the lease term from China to "GE On Wing Support – DFW Airport - USA". Dkt. 21, Ex 2-2A. The lease also specified that "[a]ny vehicles and trailers used for shipment of the [e]ngine shall be air-ride equipped." *Id.* The engines arrived at the Dallas–Ft. Worth airport and were to be delivered to GE On Wing Support, Inc. ("GE On Wing") in Grapevine, Texas. While the record is not clear as to who hired Expeditors to carry out the customs brokerage, it is clear that Expeditors hired M&M to deliver the engines to GE On Wing on M&M's trucks. Dkt. 21, Ex. 1. On December 7, 2005, the first engine (serial # 872556) was transported by M&M from

Dallas–Ft. Worth airport to GE On Wing in a non-air ride truck. Expeditors has stipulated that they should have told M&M to use an air ride truck but "failed to do so." *Id.* On January 5, 2006, the second engine (serial # 872039) was transported from Dallas–Ft. Worth airport to GE On Wing by M&M in a non-air ride truck. In this instance, Expeditors had instructed M&M to use an air ride truck but M&M failed to do so. Dkt. 21, Ex. 1-B.

GE's jet aviation repair manual required that engines of this type be transported in an air ride truck to avoid damaging the engines' bearings. Dkt. 33. The repair manual goes on to state that "if the engine is not shipped on an air ride trailer, [GE must] replace the No.1 through No.7 bearings". *Id.* Instead of replacing the bearings, GE claims it sought to mitigate damages by obtaining an exception from the GE aviation engineers. *Id.* The engineers authorized inspection of the bearings and specifically provided:

> The bearings will be inspected to piece part inspection limits per the Engine Manual. The engine manual inspection limits are such that damage due to the improper transportation will be detected. In addition, the risk of damage to the bearings is minimal, given that the engine was shipped on major roads for only 3 miles.

Dkt. 33. The inspections revealed that both engines' bearings were undamaged. Dkt. 21, Ex. 1-B. However, GE incurred "a total of $185,645.86 in inspection costs." Dkt. 33.

GE brought suit for reimbursement from M&M and Expeditors for the cost of inspection under theories of "negligence, gross negligence, breach of contract, material breach of contract, fundamental breach of contract, material deviation from contract, unreasonable deviation from contract, breach of bailment, willful misconduct and/or violation of the statutory and/or regulatory duties of a forwarder and/or common carrier." Dkt. 11. Expeditors and M&M each individually move for summary judgment on all of GE's claims against them. Dkts. 21, 38.

STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©; *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also*

*Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*,  754 F.2d 1212, 1221 (5th Cir. 1985).

## ANALYSIS

### I. Negligence Claims

Under Texas law, to prevail on a claim of negligence the plaintiff must prove that (1)

defendant owed him a duty; (2) defendant breached that duty; (3) defendant's breach was the proximate cause of the plaintiff's injuries; and (4) damages resulted from the breach. *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex. 2003); *see also Sport Supply Group. Inc. v. Columbia Cas. Co.*, 335 F.3d 454, 456 (5th Cir. 2003). Further, "a finding of ordinary negligence is prerequisite to a finding of gross negligence." *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). "Although gross negligence refers to a different character of conduct, a party's conduct cannot be gross negligence without being negligent." *Id.* Therefore, to maintain its negligence claim against the defendants, GE must meet the four elements of a negligence claim. Since the test is conjunctive, should plaintiffs fail to establish any one of the elements, the claim of negligence—and consequently that of gross negligence—must necessarily fail.

"As a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). GE claims that defendants negligently allowed the two engines to be transported on non air-ride trucks. Dkt. 11. Under Texas law, the duty of a common carrier is to "deliver to the consignee the goods . . . in an order and condition similar to the order and condition of the goods when the goods were accepted for transport." TEX TRANSP. CODE § 5.005. The duty imposed by the transportation code specifies the condition in which the goods must arrive, not the means by which the carrier effects that arrival. GE argues that Expeditors knew for both shipments and M&M knew for the second shipment that the engines should have been transported in an air-ride truck. Absent a showing of some statutory or common law duty imposed on a common carrier regarding the manner in which the goods are transported, GE's negligence claim fails at the outset.

5

But, even if GE could show that the defendants owed them the duty to use an air-ride truck, GE's negligence claim still fails because GE cannot demonstrate the requisite damages.  "[T]o recover damages for negligence, a plaintiff must show either a personal injury or property damage and not merely economic harm."  *Express One Int'l. Inc., v. Steinbeck*, 53 S.W.3d 895, 898-99 (Tex. App.—Dallas 2001, no pet.) (holding that plaintiffs could not assert a negligence claim based on a complaint that only alleged economic damages).  Economic loss is "a monetary loss such as lost wages or lost profits" as "opposed to physical injury or property damage."  Black's Law Dictionary 552 (8th ed. 2004).   In the instant case, GE has alleged damages for inspection costs which do not constitute property damage or physical injury and are therefore considered an economic loss. Economic losses may be pursued only via contractual remedies "even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *DeLanney*, 809 S.W.2d at 494-95; *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  Accordingly, GE has failed to meet the damages element required to sustain its negligence claim.   Therefore GE's negligence claim fails because GE has established no legal duty to use air-ride trucks and no damages cognizable in a negligence action.   Consequently, GE's gross negligence claim also fails and the defendants' motions for summary judgment are granted on GE's negligence and gross negligence claims.

## II. Statutory Claims

Although GE has broadly pled that the defendants have violated their statutory and/or regulatory duties, it has failed to specify what statutory or regulatory duties the defendants may have violated either as forwarders or common carriers.  As discussed above, GE cannot show that the defendants have violated the statutory duties of a common carrier. Without pleading or proving to

6

the court any other statutory or regulatory duty, GE's claims that defendants breached their statutory or regulatory duties fail.

### III. Contract Claims

The elements of a valid contract include: "(1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). The difference "between express contracts and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett*, 480 S.W.2d 607 (Tex. 1972). "In each instance there must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Id.* (quoting *Marr-Piper Co. v. Bullis*, 1 S.W.2d 572 (Tex. Comm'n App. 1928, judgm't adopted)).

### A.    M & M

In its response opposing defendant M&M's motion for summary judgment, GE stipulates that it "denies that it ever hired, directly or indirectly, M&M to deliver engines 56 and 39." Dkt. 42, Ex. A. Also in his affidavit, Brian Biersdorfer—customer service planner for GE On Wing—states that neither he "nor anyone at GE On Wing retained . . . M&M Xpress to move, ship or deliver the GE engines." Dkt. 42, Ex. B. Since GE and GE On Wing deny that they have ever hired M&M directly or indirectly then the mutuality or meeting of the minds required for existence of a contract—express or implied—is not present. Therefore all contractual claims by plaintiff GE against M&M must fail.    *Cessna*, 213 S.W.3d at 465;  *Haws*, 480 S.W.2d at 607.

**B.     Expeditors**

GE also claims that it never hired Expeditors to deliver engines 56 and 39 and that "Transworld, and not GE, hired Expeditors to deliver the engines."  Dkt. 33.  In support of this argument, GE attaches a letter from Transworld Freight System, Corp. to Korean Air Cargo in which Transworld states that " Expeditors International is the customs broker of our customer; we had authorised them to clear customs and delivery for above described shipment".  Dkt. 33, Ex 3.  GE also denies paying for the delivery.  Dkt. 33.  Since GE adamantly denies the existence of any contract with Expeditors for delivery of engines 56 and 39, the court finds that GE cannot maintain its claim for breach of contract against Expeditors.  Therefore both defendants' motions for summary judgment on GE's breach of contract claims are granted.

**IV. Bailment Claims**

The basic elements of a bailment are: "(1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs."  *Small v. Small*, 216 S.W.3d 872 (Tex. App—Beaumont 2007, pet. denied).  Since a key element of bailment requires the establishment of an express or an implied contract, success on a breach of bailment claim is predicated on a finding of a valid contract.  As discussed above, the court finds that no contractual relationship existed between GE and either of the defendants.  Consequently, GE is unable to satisfy the element of bailment requiring an express or implied contract.  Accordingly, GE's claims against the defendants for breach of bailment fail, and the defendants' motions for summary judgment on GE's breach of bailment claims are granted.

### Conclusion

Pending before the court are defendants' motions for summary judgment.  Dkts. 21, 38.  For

the reasons stated above, the motions are GRANTED with regard to all claims.

It is so ORDERED.

Signed at Houston, Texas on October 27, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

9